†MYRON T. HERRICK ET AL. v. CLEVELAND (CITY.)

1. PARTIES WHOSE PROPERTY WILL BE INJURED BY THE NEGLECT OF CITY MAY ASK
INJUNCTION WITHOUT FIRST APPLYING TO SOLICITOR.
Under sections 1777 and 1778, the plaintiffs who have been damaged in their property
rights by a failure of the city to perform its legal duty or to carry out a trust as to
streets, may sue the city to enjoin such continuing injury to them, and to enforce such
trust, without first requesting the city solicitor to bring the action, providing the
injury to them is different from that done to the public generally. But the plaintiffs
cannot bring their action on behalf of the public generally without first complying
with the provisions of the above sections.

2. IN SUIT TO ENFORCE THE DUTY OF CITY TO KEEP STREETS FREE FROM NUISANCE, CITY
IS THE PROPER DEFENDANT.
When the statutes enjoin upon the city, likewise upon the city council, and in like man-
ner upon the director of public works, the duty of keeping the streets of the city free
from public nuisances, and an action is brought to enjoin a nuisance in certain streets
of the city, and to enforce a trust which the statutes place in the city alone as to such
streets, the city is the proper defendant in such action.

---

†Cited in Pruden v. Cincinnati, 2 Ohio Dec., 200, 204; Wilder v. Cincinnati, 4 Ohio Dec.
104, 107.

**3. ABUTTERS AND OWNERS OF PROPERTY NOT ABUTTING MAY JOIN AS PLAINTIFFS.**

When a public nuisance affects several persons in the same manner by way of damages to their property, they may join as plaintiffs in an action to have the nuisance abated.

**4. CITY HAVING PARTIALLY OBSTRUCTED A STREET FOR OVER TWENTY-ONE YEARS ACQUIRES NO RIGHT TO CONTINUANCE.**

A city cannot gain a right to use a street for purposes other than that of public travel because it has so used it for more than twenty-one years, when such use has been for only three days in each week, and for only one-half of each day so used, and when not being thus used the street has been used for public travel the same as any other street of the city.

**5. IF ANY ONE OF SEVERAL CAUSES OF ACTION IS GOOD, GENERAL DEMURRER WILL NOT LIE**

Where a petition sets out three grounds of complaint, and a general demurrer is filed to the petition, and sufficient facts are averred to make any one complaint a good cause of action, the demurrer must be overruled.

Error to the Court of Common Pleas of Cuyahoga county.

CALDWELL, J.

Myron T. Herrick, Benjamin Rose, John Walworth, Lawrence Sinnott, The Sheriff Street Market & Storage Company, Anne Walworth, Sarah Walworth, Mary W. Bradbury, Manuel Halle, are plaintiffs in this action against the City of Cleveland.

This action is brought by the plaintiffs to do away with what they denominate a nuisance in a street or in streets in this city. It is known as the market-house on Sheriff street, near the junction of Sheriff street, Broadway and Woodland avenues, or in that locality; and certain nuisances which they complain of in connection with the market-house.

A petition was filed in the case below, and a demurrer to that petition. The demurrer was sustained. Judgment was tendered upon demurrer, and the case comes here by appeal.

The petition asks for a mandatory injunction.

The substance of the petition is very long, and I will not state the entire substance, but part of it. At and before the first day of October, 1866, there were within the corporation of Cleveland—which is a city within the county of Cuyahoga—three streets or avenues known as Sheriff street, Broadway and Woodland avenues. These streets had a common junction or point of intersection; and these streets were then, and had for a long time been, duly dedicated by the original proprietors of the land embraced therein, for the purpose of streets and highways of the city, and they had been accepted as such.

The petition alleges further that these streets had been for a long time within the control and regulation of the city, and had been improved and adapted for the purpose of their dedication and for the purpose of travel over the same. They were thoroughfares, and the travel leading out into the easterly and southeasterly part of the city was largely over these thoroughfares; that the lots bordering upon these thoroughfares at or near this point were at that time, in 1866, used largely for residence purposes, but owing to the growth of the city they have become business property.

The petition further sets up that the travel is greatly increased; and that at the time first above named, the city of Cleveland being then charged by law as trustee for the general public with the duty of keeping open and unobstructed such streets for the general use of persons desiring to pass through or along the same, and of preserving to the owners of lands abutting thereon the advantages and facilities which to their premises belong, as against all obstruction or diversion to their uses of said streets, and of enabling them, in the natural growth of the city, to improve this property and devote it to business purposes, did in contravention of law, and in violation of its trust in that respect, and in default of its duty, and with the intent of appropriating such portion of said streets to its own business uses, and of raising revenues therefrom, cause to be constructed thereon at said point of intersection of said streets a large building, having dimensions of about 500 feet long and sixty feet wide, and has ever since maintained and used the same for a city market, and the same being sub-divided into numerous stalls; (then it enumerates the renting of these stalls) the said stalls, and the sidewalks being so constructed by said defendant at such point or intersection as to make the course along the length of said building the direct route for foot-passengers passing along any of said streets; and by reason of such advantages of location, which by right belong to the abutting owners of the lands fronting upon said streets, and by means of the diversion of such property to such purposes, the defendant constantly, from such unlawful use of said portion of said streets, derives a large and constantly increasing revenue for its general uses.

Here is an averment that was touched upon in argument;

"That for the purpose of enabling the defendant to use such property without completely and entirely cutting off the public from the use of such streets, it at such time caused the same to be widened by taking certain triangular strips—as shown on the plat attached to the petition and marked "Exhibit B"—and included within the line of such streets and devoted to public use as such, whereby, and by reason of the construction of such building in the central part of such streets, the direct and immediate access which the public before that time had by means thereof, was converted into a narrow and circuitous course, liable at all times to be impeded by the constant approach and movement of vehicles engaged in the receiving and taking away of commodities from such market-house (the same being for such purposes furnished with frequent entrances along its entire length), whereby even from the original time and erection of such market-house, much travel, more especially upon market days, was, and has ever since continued to be diverted from such streets, and caused to pass from the central business part of the city to the outskirts by other streets and highways.

"That the said city at or about said time aforesaid, for the purpose of deriving from the use of said streets further revenue for its general purposes, caused such streets for considerable distances above and below such point of intersection thereof, and along said market-building, to be marked out and layed into what were styled market spaces, being certain spaces about six feet in width, lying along the curb lines of said streets around said market-house, and extending far enough into the different streets to admit of horses and wagons standing within the same backed up to the curb, in such manner that persons having commodities for sale can sell the same immediately from their wagons to persons passing along said sidewalks; and that from such time down to the present time said city has annually or oftener advertised such spaces for rent for such purposes, and has from time to time, and still does rent the same by competitive biddings to persons desiring to use them for such purposes, and the same have been ever since, and still are, used for such purposes by the direct procurement and authority of said city; and that included in said streets so used, are the narrow streets or passage ways along the sides of said market-building as aforesaid, the spaces along the curbs on both sides of the same being devoted to such purposes.

"The plaintiffs further aver that during the most of every week day said streets and thoroughfares are now so obstructed that it was with difficulty that vehicles can pass through and along the same, or across the same by the different streets leading thereto; and they aver that the effect of it is that travel in the thickly populated part of the city which passes over these thoroughfares to and from the city, has been diverted to other thoroughfares more circuitous, and to the damage of the property owners owning property described in this petition; that the said erection and maintenance of said building upon such streets, and the said use of said portion of said streets adjacent thereto is, and at all times has been in violation of the statutes of the state of Ohio, and the same operates as a continuing nuisance.

"That in addition to the obstruction above complained of by reason of the occupation of such streets by such market-house and said horses and wagons backed against the curb, it results from the business there carried on being largely that of the sale upon or adjacent to the street of perishable commodities, that a large amount of offal, refuse and debris naturally accumulates in the course of such business; that on market days, when market is over, it is left there for the convenience of the scavengers employed by the defendant for such purpose, making the neighborhood disagreeable so as to cause the same to be avoided by many persons who would otherwise pass along the same, and results in continual injury and damage to the premises of plaintiffs and other persons at or about the neighborhood."

It is complained that these three things: this market-house, the allowing the wagons to stand up against the market-house sidewalk extending out into the street and taking up a large part of the street, and the disagreeableness of it and the great crowd it brings there, and the congestion of teams and people who come there on business of their own, divert the legitimate business from their business property, very much to their damage.

Then it is said that a certain viaduct, 2800 feet long, has been built, which has its northern or north-easterly terminus not far from this market-house; and that a large portion of the travel which originally came by other routes, now comes over this viaduct to reach the central part of the city; and that the shortest way is over these streets named; and that also tends to increase the amount of travel; and that is being diverted, and this is complained of in this petition.

They say there has also been constructed along such portions of said streets, and immediately west of such market house, a double track street railway, over which the cars of three of the principal city street railroads are operated, and which, constantly passing, make that portion of the streets on the southerly or westerly side of the market-house almost impassable for persons desiring to travel during market hours on that side. That there is an additional amount of travel on the other side of the market-house, and this tends still further

to damage and injure the property; because persons going to and fro, or desiring to buy at a store in said market, leave this route for some other and more circuitous route.

"That the plaintiffs, and each of them who bring this action for themselves as well as for all other persons within the city having lands situated along the line of such thoroughfares, are the owners of lands abutting upon one or more of the said thoroughfares at or in the immediate vicinity of such intersection thereof. That upon substantially all of said lands are constructed buildings adapted to business purposes"—it is not necessary to read the whole of this; the substance of it has been stated.

It sets out why the plaintiffs have not an adequate remedy in this action at law.

In the prayer the plaintiffs pray for an order and decree of this court, requiring said city to abstain from the further obstruction of said streets, and from the further maintenance upon the same of said market-house, and from the use of same for such market stands; and from hereafter letting or leasing or licensing said stalls or market-house and the said spaces along the line of said streets, as places for the sale of commodities, and that it further be ordered and directed to abate the nuisance thereby occasioned, and to remove from said streets its said market-house, and all obstructions in and about the same, or used in connection therewith, and to restore such portion of said streets so occupied by said market-house in such condition as will enable them to be used by the public as and for public streets and thoroughfares, and for such further relief as equity may require.

To this petition there was filed a demurrer, and the grounds of the demurrer are:

1st. That the petition does not state facts sufficient to constitute a cause of action against the defendant.

2nd. That there is a misjoinder of parties plaintiff.

3rd. There is a defect of parties defendant.

4th. That the court has no jurisdiction of the defendant in said cause or of the subject of the action.

5th. That the plaintiffs have not the legal capacity to sue.

Some of these grounds of demurrer may be considered separately, and some of them together. There is a defect of parties defendant, when the court has no jurisdiction of the defendant in said cause, or of the subject of the action; and when the plaintiffs have not the legal capacity to sue. These are so related, and the law referring to one is so connected with the other, that they can be considered together.

It is objected in this case, in the first place, that this is an action that the statute prohibits any court from taking jurisdiction of until a request has been made to the city solicitor to bring the action, and he has refused to do that, or has neglected it for so long a time that it may be an implied refusal, and that then a taxpayer may bring the action on behalf of the corporation. When the city solicitor is to bring an action, is found in the 87th volume of Ohio Laws, page 122. Similar provisions are made in other statutes, but it is unnecessary to refer to but the one. I read from section 1777: "He (city solicitor) shall apply in the name of the corporation to a court of competent jurisdiction for an order or injunction to restrain the misapplication of funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing the same, or which was procured by fraud or corruption. And he shall likewise, whenever an obligation or contract made on behalf of the corporation granting a right or easement, or creating a public duty, is being evaded or violated, apply for the forfeiture or the specific performance of the same as the nature of the case may require. And in case any officer or board fails to perform any duty expressly enjoined by law or ordinance, he shall apply to a court of competent jurisdiction for a writ of mandamus to compel the performance of such duty."

Section 1778: "In case he fail upon the request of any taxpayer of the corporation to make the application provided for in the preceding section, it shall be lawful for such taxpayer to institute suit for such purpose in his own name, on behalf of the corporation; provided, that no such suit or proceeding shall be entertained by any court until such request shall have first been made in writing."

This statute then, if it is applicable in this case, positively prohibits any court entertaining this action till a request shall have first been made in writing to the

city solicitor. The first question is, whether or not this statute comprehends a subject-matter of this kind.

"And in case any officer or board fails to perform any duty expressly enjoined by law or ordinance, he shall apply to a court of competent jurisdiction for a writ of mandamus to compel the performance of such duty."

It is enjoined upon the city of Cleveland, section 1692, sub-division 18, Rev. Stat., "to lay off, establish, open, widen, narrow, straighten, extend, keep in order and repair, and to light, streets, alleys, public grounds and buildings, wharves, landing places, bridges and market spaces within the corporation, including any portion of any turnpike or plank road therein, surrendered to or condemned by the corporation, and to provide for laying down gas pipes."

This petition is a complaint that there is thrown upon the city a trust; that when the original proprietors of these lands put them into allotments, made these streets, there was a law in this state which law has been in this state since the year 1800 down to the present time, by which these streets are vested in the city in trust for the purposes for which they were dedicated, either by implication or by actual dedication in language itself; and that they should allow them for the purposes indicated, and for no other purposes. Then, again. it is claimed that this duty is enjoined upon the city of Cleveland by law. That being the case, we think that this statute is applicable to the subject-matter of this action.

One other question then remains to be settled in this action; whether these plaintiffs can bring this action notwithstanding this statute. Clearly we say, no; they cannot, if this is in the nature of the public coming to the court to get redress for the violation of this trust which they claim was upon the city of Cleveland, and which it must carry out towards and on behalf of the public. But if they are here in the nature of property rights which are and may be distinguished entirely from the rights of the general public, then we think this statute has nothing to do with a case of that kind.

These parties bring this action, and while they say it is on behalf of persons having lands abutting upon these streets or these avenues, yet the whole complaint of this petition is that it injures these persons in a manner different from what it does the public generally. The public generally are discommoded by these obstructions in the street simply by having to take some circuitous route; so far as the facts in this petition state, these parties have not only that complaint to make, but their complaint is that their property is damaged by reason of these streets being so crowded and cramped by this market-house, by the renting of these spaces along the market-house in the streets; that their property is damaged by being cut off from the natural trade that it should have if this obstruction was not here. That is the complaint that is special to them and not lodged in the public generally, and that being the case, we think this statute does not reach a matter of that kind.

This brings us then to the conclusion as to the right of these parties to bring this action, and as to the jurisdiction of the court, that these parties have a right to bright this action for the injury that this market place has become to them, but not on behalf of the public generally. Whatever we have to say, therefore, about this case, must be considered and so understood, that this petition, so far as it can be considered in this case, is one to redress the private wrongs that these owners of properties are suffering.

It is said that there is a misjoinder of parties defendant in the action. In addition to sec. 1692, which I have read, in regard to the duties of a city, the enjoined powers of a city over streets, and in addition to the general statute I have read in regard to the duties of a city to carry out the trust and see that the streets are used for the purposes for which they are dedicated, and for no other purposes, it is clear now that these two duties are ingrafted upon the city: Section 2640 says:

"The council shall have the care, supervision and control of all public highways, streets, avenues, alleys, sidewalks, public grounds and bridges within the corporation, and shall cause the same to be kept open and in repair, and free from nuisance." Then in 88 O. L.,

105, sec. 36 says: "The director of public works shall have the care, management and administration of streets, avenues, alleys, highways, public grounds, parks, and the opening, improving, repairing, cleaning and lighting of the same."

There might be circumstances in which an action of this kind might be brought against the city council. Perhaps there might be cases where it would be proper to bring it against the director of public works. There might be cases where it would be proper to join all three of them. But it is a case in our opinion peculiarly proper to be brought against the city direct, because it not only seeks to show that the city neglected to perform its duty, and to use the general powers given to it by way of taking care of the streets and looking after them; but in addition to that it seeks to charge the city with the performance of a duty, or trust, in carrying out the purposes for which these streets were dedicated, and says that they are converted to other uses. That being the case, these two objects and purposes being grafted in this petition, these duties being peculiar, one of them entirely to the city alone, we think as trustee the city was the proper defendant in this case, and the case is properly brought so far as the defendant is concerned.

Now, from this we go directly to the main question in this case: does the petition state facts sufficient to constitute a cause of action against the defendant? The petition states that this market-house has been there substantially since 1856, and the ground of the demurrer is that the petition itself shows upon its face that the statute of limitations has run against these property owners, and, it is claimed, also against the public; but that branch of the case we have already laid out. But it runs now against these property owners—they have an action here somewhat similar to this: If they cut off a man's right that belongs to him in connection with his property to some extent, and twenty-one years are allowed to pass, the question is whether this private right that is peculiar to one individual, or more than one who is thus affected—whether that creates a right on the part of the city, as to those individuals, to keep that obstruction there.

Now, while this case has taken a large range through various decisions of Ohio from 5 O. S. down to the present time, where our state has fairly held that an individual who obtrudes upon a street by placing something that is permanent in its nature, which entirely excludes the public from the use of that part of the street, whether or not he can gain possession by lapse of time so that he cannot be disturbed in that possession by the city or by individuals who are thus injured in the city; and while the cases in Ohio seem to indicate pretty clearly that the state of Ohio has so held, yet it is argued on the other side that, notwithstanding that an individual might thus gain his rights in the street by lapse of time, yet here is a city undertaking to gain rights by its own act in direct violation of the duty or trust placed upon that city, and that that duty or trust is of such nature that no time could run against it. A large number of the decisions cited us have been upon this question. But we must see. There are three complaints here, really. First, that this market-house itself obstructs the street; second, that these wagons backed up against the sidewalk, which has been so done for years, from year to year since 1866, that they obstruct the streets; that it is an injury to these property owners; third, that the offal that is created in the streets is a private injury to those individuals whose property is abutting upon this market place, and property in the near vicinity; that tends to turn travel away from their line. This being a general demurrer to the petition, it is clear that if the plaintiffs are entitled to any relief in this petition whatever, the demurrer is not well taken, and must be overruled.

Now, what is the effect of renting these places along the market building and the teams and wagons which are allowed to be backed up to the curb and to stay there three quarters of the day three days of the week, and sell from their wagons --create them into stores. If this demurrer is well taken, that is such an occu-

pancy, on that portion of these streets, that it has ripened into a title, into a right that cannot now be disturbed. If we hold that to be so, we must, in effect, hold that where a party occupies lands one-fourth of the time, and the other party claiming a right to occupy it all the time, and he really has a right to occupy it all the time; if he occupies it only three-fourths of the time then, to hold that this demurrer is good as to that complaint; we must hold that a person could thus gain a title to this property. That would be quite an anomaly, it seems to us, in the law of adverse possession. Adverse possession in law means exclusive possession, where some one else is excluded who claims the right to possess. And if that is under license or contract, or under any right whatever, it is not such a possession as that; and we are not ready in this case to hold that, this complaint in the petition is barred by any statute of limitations; and if it is not barred, then this petition is good, and the plaintiffs have a right under this petition, if it is found to be true, against the city who has occupied these streets exclusively for the few hours each day for three days in the week or such a matter, that there is no such bar here according to the statute of limitations; and that being true, if the facts here shown are true—they are admitted to be true by this demurrer—then these plaintiffs have a right to some relief under this petition. That being so, this demurrer will have to be overruled on the ground that it does not state facts sufficient to constitute a cause of action.

The next and last ground of demurrer is that there is a misjoinder of parties plaintiff. Some of these parties plaintiff have, property that abuts or is opposite this market place, and where these stands are along the market place, which is opposite their property, as shown by the charts attached to the petition. A few of the others, I think three of the other plaintiffs, have not their property abutting upon this market place, but it is in the vicinity close by; and it is alleged in this petition that this property was also affected; and it is a fair construction of the petition to say that they are all similarly affected so far as travel is being turned by this congestion at the market place away from these places of business.

That leaves us to inquire who can be joined as plaintiffs in this action. Section 5005 of the code reads as follows: "All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided."

It is a fair conclusion, and we have thus concluded, that the parties under the allegations of this petition are affected similarly, in that business is turned away from their business property by this obstruction or nuisance in the street, whatever it is called. And it is quite difficult to see how any of this property is affected in any other way under the allegations of this petition, except that it has diminished in value, and diminished why? Because the proper business that it should have if this market-house was not where it is—that would come to it naturally—is turned away by this market-house. And they are all affected in that way under the allegations of this petition, it is fair to say; and that being the case, they all having their private rights disturbed in a similar manner by one common object, why have they not a right, under the code, to join thus together as plaintiffs to have that common object, which is to them a nuisance as they declare in their petition, removed from the street?

We think they are properly joined. This being the case, the demurrer is overruled.

Burton & Dake, W. W. Boynton, J. M. Jones, and Henderson, Kline & Tolles, for plaintiffs in error.

Myers, Kelley, Kain & Mooney, for defendant in error.